**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**


**DR. TERRI T. SMITH**                                        **PLAINTIFF**


**V.**                 **CIVIL ACTION NO.:** <u>2:18-cv-172-KS-MTP</u>

                                                    <u>**JURY TRIAL REQUESTED**</u>


**UNIVERSITY OF SOUTHERN MISSISSIPI;**
**AND SARAH CASE-PRICE, IN HER OFFICIAL**
**CAPACITY AND INDIVUDUALLY; AND**
**JOHN DOES, X, Y AND Z**                          **DEFENDANTS**

_____

**COMPLAINT**
_____


   **COMES NOW** the Plaintiff, **DR. TERRI T. SMITH,** (hereinafter "*Plaintiff*

*Smith"* or "*Plaintiff*"), by and through counsel, and files this, her "Complaint," against

the Defendants, **UNIVERSITY OF SOUTHERN MISSISSIPPI** (hereinafter sometimes

referred to as "*Defendant USM"*), and **SARAH CASE-PRICE, IN HER OFFICIAL**

**CAPACITY AND INDIVIDUALLY** (hereinafter sometimes referred to as "*Defendant*

*Case-Price*") and **JOHN DOES, X, Y AND Z**, and in support thereof, Plaintiff Smith

would show unto the Court the following, to wit:

<u>**NATURE OF THE ACTION**</u>

   1.  Plaintiff Smith charges that this is an action for declaratory relief and

damages to redress her racial discrimination and retaliation in violation of Title VII of the

Civil Rights Act of 1964, as amended; and for, *inter alia*, racial discrimination and retaliation in violation of Title VI of the Civil Rights Act of 1964 as amended.

2.      Plaintiff Smith would show that Defendant Case-Price violated the Equal Protection Clause of the Fourteenth Amendment in that she was treated differently than other employees not her race (African-American) and that the Equal Protection Clause grants all citizens the right to be free of invidious discrimination; that all similarly situated persons be treated the same and in a similar manner; and that the core of any equal protection right is protection against intentional discrimination. *City of Cleburne v. Cleburne Living Center, 437 U.S. 432, 439, 105 S. Ct. 3249, 3253, 87 L. Ed. 2d 313 (1985). U.S. Constitution, Amendment XIV.*

3.      Plaintiff Smith would show that a public entity such as Defendant USM, as a recipient of federal funding shall comply with the mandate of Title VI of the Civil Rights Act of 1964, as amended and not ***discriminate*** against employees on account of race (African American) and not to ***retaliate*** against employees that engage in protected activities and protest their racial discrimination in the workplace.  To establish retaliation under Title VI, a plaintiff must show: (1) he was engaged in protected activity; (2) the funded entity subjected him to an adverse action after or contemporaneously with the protected activity; and (3) there is a causal link between the adverse action and the protected activity. *Whitfield v. Notre Dame Middle Sch., 412 F. App'x 517, 522 (3d Cir. 2011) (citing Peters v. Jenney, 327 F.3d 307, 320 (4th Cir. 2003)).*

4.      Plaintiff Smith also alleges ***First Amendment*** retaliation claims against the  individual Defendant Case-Price in this action; and Plaintiff Smith brings constitutional claims under ***42 U.S.C. § 1983***, which creates a private right of action

against state officials acting under color of law who deprive individuals of their constitutional rights. It is well established that "[p]ersonal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983) (citing Rizzo v. Goode, 423 U.S. 362, 371-72, 377, 96 S. Ct. 598, 46 L. Ed. 2d 561 (1976)).* A state actor may be liable under Section 1983 only if she "was ***personally involved in the acts causing the deprivation*** of [plaintiff's] constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones, 641 F.2d 345, 346 (5th Cir. 1981).*

5.      Plaintiff Smith specifically brings her claims against Defendant Case-Price that she engaged in a concerted effort to retaliate against her and ultimately engage in acts and conduct in an effort to dissuade her from pursing relief from the discrimination and retaliation in the workplace; and that Defendant Case-Price and other officials of Defendant USM, engaged in such acts and conduct with deliberate indifference; and that their actions were committed acting "color of state law" under *42 U.S.C. Section 1983.*

6.      Plaintiff Smith further claims that for bringing of matters of a "public concern" as to the illegal conduct that was and is "protected" under the First Amendment of the United States Constitution, said illegal conduct being reported to the Defendant USM that resulted in subjecting Plaintiff Smith to retaliation and reprisal, *infra*; and a transfer to another department in order to continue her employment at USM.

7.      Plaintiff Smith further claims that Defendants USM failed to take corrective action as to the known and reported violations of policy, procedure and applicable federal law by Defendant Case-Price, after having been placed on notice of the conduct by Plaintiff Smith; and the Defendant USM allowed Plaintiff Smith to be

subjected to unlawful racial discrimination and retaliation in the workplace ultimately resulting in her having to be transferred to another department at USM. Defendant USM was negligent in controlling working conditions and that as a result thereof, Defendant USM is strictly liable. See: *Vance v. Ball State Univ., 570 U.S. 421, 133 S. Ct. 2434, 186 L. 2d 565 (2013).*

8.      Plaintiff Smith seeks actual and compensatory damages for, *inter alia*, emotional harm may manifest itself, for example, as "sleeplessness, anxiety, stress, depression, marital strain, humiliation, emotional distress, loss of self- esteem, excessive fatigue, . . . a nervous breakdown[,] . . . ulcers, gastrointestinal disorders, hair loss, or headaches," *quoting EEOC Policy Guidance No. 915.002 § II (A) (2) (July 14, 1992)); see also Patterson v. P.H.P. Healthcare Corp., 90 F.3d 927, 938 (5th Cir. 1996).*

9.      Plaintiff Smith would further show that she is seeking in this action injunctive relief enjoining the officials from violating federal law; and retaliating against employees of USM that protest unequal treatment in the workplace; that file internal grievances protesting such treatment, *infra*, and that file charges of discrimination or retaliation for violating Title VII or any other applicable federal law that governs discrimination and retaliation in the workplace including Title VI of the Civil Rights Act of 1964, as amended.

10.     Under each charge, Plaintiff Smith seeks the remedies available to her in equity at and law against Defendants USM, et al and she seeks any and all relief afforded to her under applicable federal law including injunctive relief.

## JURISDICTION AND VENUE

11.     That jurisdiction of this Court is invoked pursuant to *28 U.S.C. §§ 1331, 1343* and *2201;* and *42 U.S.C. § 2000e, et seq*; and *42 U.S.C. Section 1983*.  Plaintiff's claims further arise, *inter alia*, under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution *42 U.S.C. Section 1983; and 42 U.S.C. Section 1981* as to Plaintiff Smith's claim under Title VI of the Civil Rights Act of 1964, as amended.  Defendant USM is a recipient of federal funding.

12.     Plaintiff's claims for declaratory relief arise under 28 U.S.C. § 2201 and §2202.  As the unlawful practices complained of herein occurred within the Southern District of Mississippi, venue is proper in this District pursuant to the provisions of *28 U.S.C. Section 1391*.

## PARTIES

13.     Plaintiff, Dr. Terri T. Smith, is an adult female, of the African American race and an adult resident citizen of Lamar County, Mississippi. Plaintiff Smith is employed at Defendant USM and she has been so employed at USM since July 2005.

14.     Defendant USM is is an insitution of the State of Mississippi, by Mississippi law; and is an Institution of Higher Learning of the State of Mississippi and may be served with process of this Court by serving the Honorable Jim Hood, Attorney General for the State of Mississippi at his business address at Carroll Gartin Building, 450 High Street, Jackson, Mississippi.

15.     At all material times and during the acts alleged herein, Defendant USM, acted by and through the Board of Trustees as well as its designees and agents, who were acting within the purpose and scope of his or her agency or employment, and their acts

and conduct, as alleged herein, were known to, authorized and ratified by the Defendant USM, and their actions, as alleged herein, are imputed to the Defendant USM.

16.    Defendant Sarah Case-Price is an adult resident citizen of the United States of America and she may be served with process of this Court at her place of employment, USM, The Children's Center for Communiation and Development, 118 College Drive, #5092, Hattiesburg, Mississippi 39406.  Defendant Case-Price is also sued in her individual capacity and personally for her acts and conduct as alleged herein. Defendant Case-Price is a *former* supervisor of Plaintiff Smith at USM.

17.    Plaintiff Smith claims that individual liability exists, *inter alia*, for the harassment, racial discrimination, retaliation, hostile work environment, and intolerable working conditions.   Defendant Case-Price actively participated in the acts alleged herein; and that she is liable for her personal conduct; and the damages sustained by Plaintiff Smith.   Defendant Case-Price is individually and personally liable for her acts and conduct under 42 U.S.C. Section 1983.

18.     Plaintiff Smith claims that the harassment, discrimination, retaliation, hostile work environment, and intolerable working conditions were known to Defendant USM; and that no action was taken by Defendant USM to address the disparate treatment by Defendant Case-Price for her racial discrimination and retaliation in the workplace. The solution for Defendant USM was to transfer Plaintiff Smith to a new job, with new job duties.  Plaintiff Smith is no longer performing her job duties in social work at USM.

19.    That at all material times Defendant USM was and is an employer for purposes, *inter alia*, of Title VII of the Civil Rights Act of 1964, as amended and any

pendent claims in this action. *Arbaugh v. Y & H Corp., 546 U.S. 500, 126 S. Ct. 1235, 163 L. Ed. 2d 1097, 2006 U.S. LEXIS 1819 (2006).*

20.     That at all material times Defendant USM was and is a recipient of federal funds under Title VI of the Civil Rights Act of 1964, as amended, that imposes liability on the institution such as Defendant USM for such racial discrimination and retaliation.

21.     Defendants John Does X, Y, and Z are unnamed parties to this lawsuit as their identity at this time is not known, including the officials of Defendant, USM that were personally involved in the claimed constitutional deprivation or in which there is a causal connection between any act of any official and the alleged constitutional violation. *Douthit v. Jones, 641 F.2d 345, 346 (5th Cir. 1981).*

## **INTRODUCTION**

22.     Plaintiff Smith has been employed with the University of Southern Mississippi ("USM") since July 2005.  In 2013, Plaintiff Smith was transferred to the to The Children's Center for Communication and Development ("Children's Center") after being hired by Cindy Bivins, the former Director of the Children's Center at that time.

23.     Defendant Case-Price became the Director of the Children's Center in 2013 and she has been in that position of leadership during all of the times and events alleged herein.

24.     Plaintiff Smith obtained her doctorate degree in Behavioral Health in May 2015 from Arizona State University. Plaintiff Smith's training, education, and working experience at USM from July 2005 to December 2017, has been in the area of social work.  Plaintiff Smith also served as a Service Coordinator in the Children's Center under the supervision of Defendant Case-Price.

25.    Plaintiff Smith in 2017 filed an internal grievance and Charge with the United States Equal Employment Opportunity Commission ("EEOC") alleging that she had been discriminated and retaliated against by Defendant Case-Price, *infra*. This action follow the notice of "Right to Sue" issued by the United States Department of Justice ("DOJ"), *infra.*

26.    Plaintiff Smith was transferred to a position in 'Student Affairs" at USM in December 2017. Plaintiff Smith began performing her duties in the new position in Student Affairs beginning January 2018. As of this date, Plaintiff Smith continues to work in Student Affairs at USM.   Plaintiff Smith, since her transfer to Student Affairs, no longer teaches at USM and she is no longer involved in social work.

27.    Plaintiff Smith in 2017 filed an internal grievance and Charge with the United States Equal Employment Opportunity Commission ("EEOC") alleging that she had been discriminated and retaliated against by Defendant USM and that Defendant USM has continued to subject her to racial discrimination, retaliation and reprisal, infra.

<u>STATEMENT OF FACTS REGARDING THE<br>THE CLAIMS OF PLAINTIFF SMITH</u>

28.    Plaintiff Smith would show that when she was hired as the social worker for the Children's Center, there were two (2) other African American staff, Rosella Taylor and Sharlene Cage.  Ms. Taylor, and Ms. Cage were hired Margaret Brinegar and Cindy Bivins at the Children's Center.

29.    Plaintiff Smith was a social worker at USM from her date of hire until her transfer to another department at USM after making complaints, *infra*, against Defendant Case-Price.  Plaintiff Smith obtained her doctorate degree in Behavioral Health in May 2015 from Arizona State University.  At the material times alleged herein, Plaintiff Smith

was supervised by Defendant Case-Price, Director of The Children's Center for Communication and Development at USM.

30.    Plaintiff Smith would show that she was the **_only_** African American degreed professional in The Children's Center for Communication and Development at USM. Plaintiff Smith would show that Defendant Case-Price makes decisions as to pay raises and salary amounts for those employees under her supervision in the Children's Center at USM and she has done so since she became the Director in 2013.

31.    Plaintiff Smith would show that Caucasian employees were preferentially given pay raises by Defendant Case-Price; that African American staff were unlawfully denied salary increases and merit raises, and that African American staff were treated differently and subjected to retaliation when seeking a pay raise of any kind; and were subjected to different terms and conditions of employment. Defendant Case-Price was also given raises and increases in pay (with her approval) when African American staff were denied a pay raise or merit increase.

32.    Plaintiff Smith would show that gradually in late 2015 and early 2016 that Defendant Case-Price was leaving her out of staff meetings, not involving her in the clinical teams, leaving her left out of planning sessions and staffing for workshops, not allowing her to make a presentation at the workshops and conferences, not providing her with merit based raises, not being provided annual raises, paying her and the other African American staff member less wages and pay than the similarly situated Caucasian staff, making her to use her university "leave time" to teach undergraduate courses, and not subjecting her to the same terms and conditions as other employees similarly situated to her.

33.    Plaintiff Smith would show that other Caucasian employees of the Defendant Case-Price's department, including Defendant Case-Price, received merit based raises from the same funding source for Plaintiff Smith.  Defendant Case-Price did not have a legitimate reason for not providing Plaintiff Smith with a merit based raise in July/August 2015 when the other merit raises were given to Defendant Case-Price, et al.

34.    Plaintiff Smith would show that she later learned in August 2017 that other Caucasian employees of the Defendant Case-Price's department were provided annual increases based upon the Mississippi Department of Education guidelines, but not Plaintiff Smith.  Defendant Case-Price chose to not provide Plaintiff Smith with an annual increase that other USM similarly situated employees received in the department.

35.    Plaintiff Smith would show that Caucasian staff within the department supervised by Defendant Case-Price that were allowed to teach undergraduate courses without penalty, when she, on the other hand, had to use her "***leave time***" to teach undergraduate courses at USM.  The loss of leave time meant that Plaintiff Smith lost employment benefits and Caucasian staff did not.

36.    Plaintiff Smith would show that in November 2016, she had discussions with Defendant Case-Price regarding the potential for her receiving a raise and position change in her department at USM.   Defendant Case-Price told Plaintiff Smith during the November 2016 meeting that there were "***no funds to give her a raise***" in the department.

37.    Plaintiff Smith would show that she expressed to Defendant Case-Price that other employees had received pay raises and that she had not been given a department raise since earning her doctorate degree.  Defendant Case-Price had no

comment as to that matter of inquiry.  Defendant Case-Price also had no response to the disparities in pay and benefits that Plaintiff Smith faced in the department.

38.    Plaintiff Smith would show that she raised concerns with Defendant Case-Price regarding the in-office referrals for parents of professionals seeking services for children. Plaintiff Smith would show that Defendant Case-Price allowed certain "families" to get in and while others, mostly African American, would depend on where the families lived.

39.    Plaintiff Smith would show that Defendant Case-Price had a common practice for the department staff to contact law enforcement to research an area or person **_before_** traveling to their home to perform services; and it was a common practice **_not_** to provide services to a family because of where they lived or because of their race. Plaintiff Smith reported to officials of USM that African American families were entitled to have the available services of the Children's Center under applicable federal law and that Defendant Case-Price's practices were contrary to law.

40.    Plaintiff Smith would show that she continued to faithful serve USM despite the issues and concerns about the policies being violated Defendant Case-Price. Plaintiff Smith engaged in every effort to comply with the applicable policies and procedures of the Mississippi State Department of Health ("MSDH") First Steps Early Intervention/Service Coordinator position held by her at USM.

41.    Plaintiff Smith would show that Defendant Case-Price would at times overlook her role as a Service Coordinator; and that despite this adverse treatment, Plaintiff Smith would serve the families of The Children's Center for Communication

and Development.   Defendant Case-Price did not show a desire to have diversification in the staff of the Children's Center.

42.    In February 2017, Defendant Case–Price met with Plaintiff Smith and informed her that her job description was going to ***change*** to "Social Worker" (the job description she was hired as) and that her position of "Service Coordinator" would be taken away.  Defendant Case-Price told Plaintiff Smith that she was "tired of dealing with the Mississippi Department of Health ("MSDH")."

43.    Plaintiff Smith would show that the MSDH provided Defendant USM with a grant for the servicing of families in the greater Hattiesburg, Mississippi area. Plaintiff Smith was told by Defendant Case-Price that she worked under that federal/state grant allocation.

44.    Defendant Case-Price in February 2017 told Plaintiff Smith that ***she was going to deny*** the funding contract with the Mississippi State Department of Health; and that she and the Office Manager had "looked at the books" and that the department could pay Plaintiff Smith's salary.  According to Defendant Case-Price, the MSDH grant paid 2/3 of the salary of Plaintiff Smith at USM.

45.    During the same February 2017 meeting Plaintiff Smith made inquiry if she would be receiving a raise that they had talked about In November 2016, and Defendant Case-Price said "**Yes**" she would receive a raise. Prior to this date, Plaintiff Smith had been told that there was "***no money***" for a raise.

46.    On or about March 8, 2017, Plaintiff Smith posted an advocacy statement regarding social work month on her personal social media platform, Facebook. On March 23, 2017, Defendant Case-Price discussed with Plaintiff Smith the Facebook post.  No

mention was made during the meeting by Defendant Case-Price that the Facebook post was a violation of any rule or policy or that it was a matter of a mandate disciplinary action or a record of counselling.

47.    Plaintiff Smith would show that the Facebook post was in regard to a matter of "public concern" as to the need to support social work and it was on Plaintiff Smith's own *personal* Facebook account.  Plaintiff Smith would show that her Facebook advocacy post was regarding the importance of social workers; and the post did not mention the Children's Center, Plaintiff's job, or Defendant Case-Price.  The personal Facebook post was written for a colleague that worked at a home health agency.

48.    On or about March 24, 2017, Plaintiff Smith was "written up" by Defendant Case-Price for the social media post that she had made on March 8, 2017. Upon receipt of the write up, Plaintiff Smith immediately contacted the Human Resources Department at USM regarding the disciplinary action and act of retaliation by Defendant Case-Price.

49.    On or about March 27, 2017, Plaintiff Smith filed an internal grievance with the office of Human Resources at USM, in regard to the write up and actions of her supervisor, Defendant Case-Price as well as Defendant Case-Price's management style being one of racial bias; and issues and concerns that she had about the department being supervised by Defendant Case-Price and her leadership.

50.    Plaintiff Smith had expectations that USM would investigate and address the discrimination and retaliation of Defendant Case-Price and she placed the university on notice of the issues regarding Defendant Case-Price and the operations of the department in which Defendant Case-Price served as USM's Director.  Those matters

addressed by Plaintiff Smith were of a "public concern" and Plaintiff Smith did not believe that she would be retaliated by anyone for bringing those matters of public concern to the attention of her employer, Defendant USM.

51.    Plaintiff Smith would show that in May of 2017, there were department "rumors" that the Mississippi Department of Health grant would not been extended for the upcoming school year.  Defendant Case-Price did not formally make any announcement as to the impact the lack of MSDH funding would have on Plaintiff Smith's position within the department or the staff of The Children's Center for Communication and Development.

52.    In May 2017, Plaintiff Smith's grievance against Defendant Case-Price was pending investigation by the Defendant USM.  Human Resources at USM sought to have a mediation to see if the grievance could be resolved.

53.    On or about May 22, 2017, Plaintiff Smith and Defendant Case-Price met in a mediation with an official in the Human Resources Department.  Plaintiff Smith would show that during the meeting, Defendant Case-Price was defensive, raised her voice, raised her arms, and rolled her eyes in a demeaning, disrespectful and unprofessional manner. The meeting did not resolve anything.  Defendant Case-Price's actions at the meeting were intimidating and caused Plaintiff Smith great concern as to her job at USM and her future employment at USM.

54.    In May 2017, Defendant Case-Price met with Plaintiff Smith and informed her that if the contract with MSDH is not extended, Plaintiff Smith would not have a job. Plaintiff Smith was distraught.  Plaintiff Smith had been told by Defendant Case-Price in

February 2017 that even if the MSDH grant or contract was not extended that the department had appropriate funding for her position in the department.

55.     At the same time that Plaintiff Smith was threatened with the loss of her job, other new employees were being hired by Defendant Case-Price. Plaintiff Smith would show that five (5) Caucasian females were hired by Defendant Case-Price in the department since February 2017.  Plaintiff Smith, an African American, was aware of the "new hires" and later that raises had been given by Defendants USM and Case-Price to Caucasian staff in the department – but not to her.

56.     Plaintiff Smith would show that she discovered after the filing of her 2017 internal grievance that now included her pay complaint, that Defendant Case-Price and USM had a history in the Children's Center of not hiring African American staff.  Since Defendant Case-Price became Director of the Children's Center in July 2013, that there had been eighty-two (82) applicants for positions in the department of which 25% have been minorities. Of those applicants sixteen (16) applicants interviewed, less than **1%** were minority applicants; and that all sixteen (16) applicants hired by Defendant Case-Price and USM were Caucasian.

57.     Plaintiff Smith would show that when she transferred to Defendant Case-Price's department that she, along with another African –American female, were the only African Americans staff members working in the department.  Both Plaintiff Smith and Rosella Monique Taylor, an African American female, were hired ***before*** Defendant Case-Price became Director.  Dr. Taylor was terminated by Defendant Case-Price after making inquiry regarding the receiving a pay raise.

58.      In June 2017, the "Communications Coordinator" in the department resigned, Samantha McCain, and Plaintiff Smith asked Defendant Case-Price if those "funds could be used" to fund her position since the MSDH grant was not extended. Defendant Case-Price told Plaintiff Smith "No."

59.      Plaintiff Smith would show that in June 2017 that she sought the assistance of the U.S. Equal Employment Opportunity Commission ("EEOC") regarding her treatment and discrimination in the workplace by her employer, USM.  Plaintiff Smith would show that she told the EEOC, *inter alia*, that she was the only African American degreed professional in her department; that she was the only social worker in the department and that in the Spring of 2016 that another African American employee, Rosella Monique Taylor, has been terminated by Defendant Case-Price, after complaints were made about her pay.

60.      On or about June 12, 2017, Plaintiff Smith filed a Charge of Discrimination and Retaliation against Defendant USM with the Jackson Area Office of EEOC.  Plaintiff Smith would show that the Defendant USM was timely served with the Charge filed with the EEOC; and made aware of the allegations of Plaintiff Smith.

61.      On June 20, 2017, Defendant Case-Price delivered to Plaintiff Smith notifying her of the termination of her employment and that her last day of employment would be July 17, 2017.

62.      Plaintiff Smith would show that since April 2017, that four (4) employees have been hired by Defendant Case-Price and USM in the department all Caucasian females.  Plaintiff Smith would show that at the same time that Defendant Case-Price was

attempting to terminate her employment, new employees in the department were being hired by Defendant Case-Price and USM.

63.    On or about July 10, 2017, Plaintiff Smith filed her Amended Charge of Discrimination and Retaliation with the EEOC; and attached to the Amended Charge is a copy of the letter of termination.  The Amended Charge filed with the EEOC is attached hereto, marked **Exhibit "A"** and incorporated herein by reference.

64.    Plaintiff Smith would show that her employment did not end on July 17, 2018.  Plaintiff Smith would show that she continued to work under the supervision of Defendant Case-Price in the same department, The Children's Center of Communication and Development.  Plaintiff Smith engaged in diligent efforts to perform her job despite being "ignored" by her supervisor, Defendant Case-Price.

65.    On or about July 28, 2017, Plaintiff Smith was approached by Dr. Jerome R. Kolbo in regard to teaching a graduate course SWK 661 in the Department of Social Work.  Plaintiff Smith agreed to teach the course for the experience and additional pay and income.

66.    Plaintiff Smith would show that Defendant USM was aware of the employee data regarding the employment and hiring practices of Defendant Case-Price in June 2017.  However, despite the racial bias of Defendant Case-Price, she still remained in charge of the department and Plaintiff Smith had a grave concern about her own job security and future at USM.

67.    On or about August 1, 2017, Dr. Kolbo told Plaintiff Smith and other staff that the course would be taught on Tuesday and Thursday each week.  The next day, August 2, 2017, Dr. Kolbo told Plaintiff Smith that Dr. Tim Rehner, Director of Social

Work made the decision for her not to teach that graduate course that she had been requested and retained to teach. Plaintiff Smith was replaced and denied the opportunity to teach and earn additional income.

68.    Plaintiff Smith would show that teaching courses at USM in the past earned her $2,500.00 a semester and teaching is very significant to her growth at work and for her career; and that to be denied that opportunity was racially discriminatory and retaliatory. Plaintiff Smith has not been chosen to teach since August 2017.

69.    Plaintiff Smith would show that the denying her the ability to teach graduate courses in the Department of Social Work was and is discriminatory on account her race (African American) as others not of her race have been treated differently and have not been subjected to retaliation and reprisal as a result of engaging in a protected activity – opposing unlawful treatment in the workplace and filing an EEOC Charge – in violation of Title VII of the Civil Rights Act of 1964, as amended.

70.    In August 2017, the "Communications Coordinator" was posted and the person to be hired at the time of position had already been interviewed by Defendant Case-Price. Plaintiff Smith was told that the person being hired for that position would have access to her office. Now, Defendant Case-Price was taking away Plaintiff Smith's work space and she was still uncertain as to her "employment future" at USM based upon the actions taken against her. Plaintiff Smith continued to work in Defendant Case-Price's department but she was isolated in the workplace.

71.    Plaintiff Smith would show that Defendant Case-Price would later interview an African American for the "Communications Coordinator" position in the Children's Center but the candidate would not be hired, *infra.* Plaintiff Smith would show

that a Caucasian female, Courtney Tesh, was hired for the position by Defendants USM and Case-Price.

72.    Plaintiff Smith would show that she was not told as to her employment future at USM, but she was not terminated.  Plaintiff Smith continued to utilize her social work skills and her educational skills serving the children and families of the greater Hattiesburg, Mississippi area.  Plaintiff Smith was in constant fear of losing her job as result of her reporting and engaging in a protected activity- protesting her treatment in the workplace, filing a grievance and filing with the EEOC.

73.    Plaintiff Smith would show that in December 2017, before USM Christmas break, that she was told by officials at USM of the transfer to another department. Plaintiff Smith started her new position in Student Affairs at USM on January 3, 2018.

74.    Plaintiff Smith would show that she accepted the transfer to another department for her continued employment at USM and to escape the hostile working environment in the Children's Center.  Plaintiff Smith, as a single parent with a disabled daughter, had limited options and USM was fully aware of her situation; and the reporting she made as to the actions and conduct of Defendant Case-Price, *infra* as alleged herein.

75.    Plaintiff Smith would show that this transfer was to a totally different position at USM and required that she learn a new job.  The working environment at USM is now excellent and she is pleased, but she had to learn new job duties and responsibilities in a different department.  Plaintiff Smith's social work duties are now being performed by a Caucasian female, Melissa Braxton, in the Children's Center at

USM.  Ms. Braxton was hired by Defendant Case-Price when she was a social work student at USM.

76.     Plaintiff Smith would show that USM allowed Defendant Case-Price to continue as Director for the most part unscathed.  Plaintiff Smith, on the other hand, would be transferred to a ***new*** job and ***new*** position at USM and away from her field of social work, *infra*.  Plaintiff Smith also no longer teaches undergraduate courses like in the past at USM.

77.     Plaintiff Smith would show that the USM transfer of Plaintiff Smith from Defendant Case-Price's department was to a position that was ***less prestigious***, not in her area of expertise, not her chosen duties for which she was hired and performed in Defendant Case-Price's department.

78.     Plaintiff Smith would show that her new position in Student Affairs did not result in a salary or wage increase, did not involve the duties of social work, has less room for advancement at USM in her area of expertise - social work, and is not the chosen field of her specialty. *Alvarado v. Texas Rangers, 492 F.3d 605, 613-15 (5th Cir. 2007)*.

79.     Plaintiff Smith would show that whether a new position is worse is an objective inquiry. *Alvarado, 492 F.3d at 613-14, citing Pegram v. Honeywell, Inc., 361 F.3d 272, 283 (5th Cir. 2004)*.  Objectively, Plaintiff Smith has a doctorate degree from Arizona State University that she is not utilizing in her current position at USM.

80.     Plaintiff Smith would show that her social work duties are now being performed by a Caucasian female, Melissa Braxton, in the Children's Center at USM.  Ms. Taylor, previously terminated by Defendant Case-Price was also replaced by a

Caucasian female in the Children's Center.  Defendant USM, as of June 2018, had failed to hire an African American female to perform the duties of Dr. Taylor and Plaintiff Smith.

81.     Plaintiff Smith would show that on or about June 21, 2018, the U.S. Department of Justice, Civil Rights Division, granted Plaintiff Smith's requested "Right to Sue" since more than 180 days had lapsed since the date the EEOC had assumed jurisdiction over the charges of Plaintiff Smith; and that a copy of the "Right to Sue" received by Plaintiff Smith on **June 29, 2018**, from the U. S. Department of Justice, Civil Rights Division, and the U.S. Equal Employment Opportunity Commission is attached hereto marked **Exhibit "B"** and incorporated herein by reference.

82.     Plaintiff Smith has met all the requirements for the timely filing of this Complaint under the "Right to Sue" issued to her in this action and in compliance the Notice of Right to Sue" of June 21, 2018, by the U. S. Department of Justice, Civil Rights Division that was received by her on June 29, 2018.

## CLAIMS AGAINST DEFENDANT CASE-PRICE

83.     The United States Supreme Court has held that state officials can be subject to personal liability in Section 1983 actions, *Hafer v. Melo, 502 U.S. 21, 26-27, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991)*, and that state agencies and state employees sued in their ***official capacities*** are not subject to liability in Section 1983 actions. *Will v. Mich. Dep't of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989).*

84.     Plaintiff Smith would show that for 42 U.S.C. Section 1983 liability to be imposed against state officials, Plaintiff Smith must show that the individual defendants,

such as Defendant C/P, were either ***personally*** involved in the constitutional deprivation, or that their wrongful actions were ***causally connected*** to the deprivation.

85.    Plaintiff Smith would show that Defendant Case-Price has personal liability for her acts and conduct alleged herein; and that her conduct as alleged herein violated a clearly established constitutional right of Plaintiff Smith.  Plaintiff Smith was retaliated against by Defendant Case-Price and any and all *persons* who violate federal rights while acting under color of state law are to liable for damages.  *Haywood v. Drown, 556 U .S. 729 (2009)*.

86.    Plaintiff Smith would show that in a Section 1983 lawsuit, it must be established that the defendant was either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation.  *Jabary v. City of Allen, 547 Fed. Appx. 600, 2013 U.S. App. LEXIS 23628 (5th Cir. 2013); see also: Jones v. Lowndes County, Miss., 678 F.3d 344, 349 (5th Cir. 2012) (quoting James v. Texas Collin County, 535 F.3d 365, 373 (5th Cir. 2008)) (emphasis added)*.

87.    Plaintiff Smith would show that a ***single act*** against one individual can be a violation of the Equal Protection Clause; and that Defendant Case-Price engaged in acts and conduct that subjected Plaintiff Smith to intentional and arbitrary discrimination and retaliation.

88.    The United States Supreme Court in *Owens v. Okure, 488 U.S. 235, 249-50, 102 L. Ed. 2d 594, 109 S. Ct. 573 (1989)* held "that where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." Accordingly, in **Mississippi,** the general three (3) year statute of limitations of Section 15-1-49 of the

Mississippi Code applies to Section 1983 claims. *Thomas v. City of New Albany, 901 F.2d 476, 476 (5th Cir. 1990).*

## PLAINTIFF SMITH AND HER EMPLOYMENT AT USM

89.    Plaintiff Smith is a current employee of the Defendant USM. Plaintiff Smith's background and education is social work, *infra*. During her employment with USM in Defendant Price-Case's department, The Children's Center for Communication and Development ("Children's Center"), her job duties related to social work and she assisted families in the Greater Hattiesburg, Mississippi area. The social work job duties stayed the same until Plaintiff Smith was transferred to by USM to another department.

90.    Defendant USM at all material times knew of the issues Plaintiff Smith had with Defendant Case-Price, including her racial bias and her retaliation for Plaintiff Smith having engaged in protected activities under Title VII; and Plaintiff Smith having reported matters of a public concern regarding Defendant Case-Price's violations of policy and her unlawful treatment as to families interviewed and assisted by The Children's Center.

91.    Plaintiff Smith, despite the conduct and actions of Defendant Case-Price, she diligently performed the duties assigned to her in the Children's Center. Plaintiff Smith would show that at all material times, the department being operated by Defendant Case-Price was a recipient of federal funding that prohibits programs such as USM from discriminating or retaliating against employees that protest racial discrimination in the workplace.

92.    Plaintiff Smith was the only employee in her department that had a doctorate degree, and she was treated differently on account of her race. Defendant

USM knew of the actions of Defendant Case-Price at all material times; and USM knew of the working conditions that Plaintiff Smith was being subjected to in the workplace after engaging in activities protected under Title VI and Title VII.

93.     Plaintiff Smith reported the actions of Defendant Case-Price, *infra*, and Defendant USM was negligent in controlling working conditions at USM after being made aware of the treatment of Plaintiff Smith in the workplace at USM.

## DEFENDANT CASE- PRICE AND HER EMPLOYMENT AT USM

93.     Plaintiff Smith would show Defendant Case-Price has been a longtime Director of The Children's Center for Communication and Development at USM. The Children's Center for Communication and Development consists of more than twenty (20) employees, one of which is Plaintiff Smith.

94.     Defendant Case-Price would place additional stress on Plaintiff Smith in the workplace and subject Plaintiff Smith to disparate treatment and deny her pay raises when at the same time, hiring of new staff, all Caucasian, in the department; and when Plaintiff Smith approached Defendant Case-Price regarding policy violations of even her being paid in line with others – she would be shunned.

95.     Defendant USM knew at all material times as to the "unchecked" and "unfettered" authority of Defendant Case-Price, but failed to address the same as well as the discriminatory and retaliatory acts of Defendant Case-Price and the violation of applicable federal law.  Defendant USM simply failed to address the unfettered authority in her leadership of the Children's Center at USM.  In the meantime, African American employees (and potential employees), including Plaintiff Smith were subjected to racial discrimination and retaliation in the workplace at USM.

24

96.    Plaintiff Smith would show that Defendant Case-Price has not hired an African American professional staff for the Children's Center. Plaintiff Smith would show that it was not until *__after__* Plaintiff Smith's reporting of the racial conduct of Defendant Case-Price and by filing her Charge with the EEOC that Defendant Case-Price "strategically interviewed" an African American for the Communications Coordinator position at USM.

97.    Plaintiff Smith would show that Defendant Case-Price, as the Director of an institution that receives federal funds had a duty to comply with the policies and procedures applicable to the Children's Center and federal law, *infra*, but she simple failed to do so and the Defendant USM did not monitor her conduct and actions that violated federal law, *infra*.

98.    Plaintiff Smith would show that this strategic interview of an African American candidate for the "Communications Coordinator" was the ***first time*** that Defendant Case-Price followed the USM protocol of interviewing anyone for a position at the Children's Center. Defendant Case-Price in this instance even formed a search committee for the interviewing of applicants. However, an African American candidate was not hired for the position.

99.    Defendant Case-Price's disparate treatment was the subject of the First and Amended Charge of Plaintiff Smith that alleged, *inter alia*, that she was subjected to racial discrimination and that the Defendant USM had violated federal law. Defendant Case-Price is personally liable for her own acts and conduct alleged herein.

100.    Defendant Case-Price was personally involved in the racial misconduct and the Defendant USM continued to have her in a position of leadership at the

Children's Center at USM.   Defendant Case-Price's actions have resulted in Plaintiff

Smith losing her position in social work at the Children's Center despite her expertise in

that area and with her experience and doctorate degree from Arizona State University.

## COUNT I

## DISCRIMINATION AND RETALIATION UNDER TITLE VI

101.    Plaintiff Smith re-alleges and hereby incorporates by reference and makes

a part hereto each and every one of the above numbered paragraphs, inclusive of the

allegations of fact contained therein.

102.    Plaintiff Cox would show that Title VI prohibits discrimination on the

basis of race by recipients of federal funds. *E.E.O.C. v. Chevron Phillips Chem. Co. L.P.,*

*570 F. 3d 606, n.5 (5th Cir. 2009)* and that Title VI prohibits discrimination on the basis

of race and retaliation by recipients of federal funds such as Defendant USM.  Defendant

USM by the actions alleged herein subjected Plaintiff Smith to racial discrimination in

violation of Title VI, *infra*.

103.    Plaintiff Smith would show that to establish retaliation under Title VI, a

plaintiff must show: (1) he was engaged in protected activity; (2) the funded entity

subjected him to an adverse action after or contemporaneously with the protected

activity; and (3) there is a causal link between the adverse action and the protected

activity. *Whitfield v. Notre Dame Middle Sch., 412 F. App'x 517, 522 (3d Cir. 2011)*

*(citing Peters v. Jenney, 327 F.3d 307, 320 (4th Cir. 2003)).*

104.    Plaintiff Smith would show that a retaliation claim under 42 U.S.C. § 1981

is the same as the Title VI claim except that Title VI applies only to funded entities. ***To***

***satisfy the first element of a retaliation claim, Plaintiff must establish that he engaged***

*in "protected activity" that relates to discrimination. See Jimmy v. Elwyn, Inc., Civ. A.*

*No. 11-7858, 2014 U.S. Dist. LEXIS 19603, 2014 WL 630605, at \*10 (E.D. Pa. Feb. 18,*

*2014). **Protected activity includes "formal charges of discrimination as well as***

***informal protests of discriminatory [educational] practices, including making***

***complaints to management***." Barber v. CSX Distrib. Servs., 68 F.3d 694, 701-02 (3d Cir.*

*1995). Lei Ke v. Drexel Univ., 645 Fed. Appx. 161, 2016 U.S. App. LEXIS 5212 (3d Cir.*

*Pa., 2016).*

105.    Plaintiff Smith would show that Title VI of the Civil Rights Act of 1964

provides that "[n]o person in the United States shall, on the ground of race, color, or

national origin, be excluded from participation in, or denied the benefits of, or be

subjected to discrimination under any program or activity receiving Federal financial

assistance." *42 U.S.C. Section 2000d.*

106.    Plaintiff Smith would show that a Title VI plaintiff may seek to hold

qualifying programs liable for retaliation based on actions taken post-employment; for

example, "[a] plaintiff can establish an actionable claim of discrimination if he can show

that his employer prevented him from obtaining another position through the use of a

negative employment reference and that the negative reference was issued as retaliation

for engaging in protected conduct." *Hickey v. Myers, 852 F. Supp. 2d 257, 273 (N.D.N.Y.*

*2012)).*

107.    Plaintiff Smith would show that to "state a claim for Title VI retaliation, a

plaintiff must show: (1) participation in a protected activity, that was known to the

defendants; (2) adverse action by the defendants against the plaintiff; and (3) a causal

connection between the plaintiff's protected activity and the defendants' adverse action."

*Palmer v. Penfield Cent. Sch. Dist., 918 F. Supp. 2d 192, 199 (W.D.N.Y. 2013)*. "A substantive violation of Title VI occurs when '(1) ... there is racial or [other prohibited] discrimination and (2) the entity engaging in discrimination is receiving federal financial assistance.'" *Id. (quoting Baker v. Board of Regents of State of Kansas, 991 F.2d 628, 631 (10th Cir. 1993))*.

108.    Plaintiff Smith would show that to demonstrate participation in a protected activity under Title VI, a plaintiff need only have 'a good faith, reasonable belief that he was opposing an employment practice made unlawful' by Title VI." *Morales v. NYS Dep't of Labor, 865 F. Supp. 2d 220, 252 (N.D.N.Y. 2012), aff'd sub nom. Morales v. N.Y. State Dep't of Labor, Div. of Employment Servs., 530 F. App'x 13 (2d Cir. 2013)*. As noted previously, Title VI only prohibits discrimination on the basis of race, color or national origin. *42 U.S.C. § 2000d*.

109.    Furthermore, Defendant USM allowed retaliation in violation of Title VI and failed to stop the harassment and hostile work environment that Plaintiff Smith was subjected to *infra*, and that had been reported to USM during the time that Plaintiff Smith worked under the supervision of Defendant Case-Price.

110.    Plaintiff Smith seeks any and all remedies and damages available to her as a result of the aforementioned acts and conduct that were in violation of Title VI of the Civil Rights Act of 1964, as amended including the appropriate injunctive relief and equitable relief that may be available to her for the Defendant USM's violation of the federal funding requirements un Title VI.

## COUNT II

## HARASSMENT OF PLAINTIFF SMITH AT USM

111.    Plaintiff Smith re-alleges and hereby incorporates by reference and makes part hereto each and every one of the above numbered paragraphs, inclusive of the allegations of facts contained therein.

112.    Plaintiff Smith would show that she was subjected to harassment by Defendant Case-Price and that Defendant USM was negligent in controlling working conditions at USM.

113.    Plaintiff Smith would show that the Defendant USM, is liable for the harassment and adverse employment action taken against her.  The actions of Defendant Case-Price, her supervisor, culminated in a tangible employment action, the employer, USM, is strictly liable. See *Vance v. Ball State Univ., 570 U.S. 421, 133 S. Ct. 2434, 186 L. 2d 565 (2013).*

114.    Defendant USM did not did not exercise reasonable care to prevent and correct any harassing behavior and that Plaintiff Smith took advantage of the preventive or corrective opportunities that USM provided that included the filing of grievances, infra, and filing a Charge with the EEOC regarding the acts and conduct of Defendant Case-Price and the harassment in the workplace at USM.

115.    Plaintiff Smith would show that at all material times that Defendant USM was aware of that Plaintiff Smith had protested this treatment by Defendant Case-Price that occurred at USM; and that Defendant Case-Price at all times was empowered by

USM to take tangible employment actions against Plaintiff Smith and she did so.  See:

*Vance v. Ball State Univ., infra.*

116.    As a result of the acts and conduct described herein by the Defendant

USM, Plaintiff Smith seeks any and all relief to which she is entitled to recover including

money damages against Defendant USM.

## COUNT III

## RACIAL DISCRIMINATION UNDER TITLE VII

117.    Plaintiff Smith re-alleges and hereby incorporates by reference and makes

a part hereto each and every one of the above numbered paragraphs, inclusive of the

allegations of fact contained therein.

118.    Plaintiff Cox would show that Title VII prohibits discrimination on the

basis of race; and Defendant USM's actions alleged herein subjected Plaintiff Smith to

racial discrimination in violation of Title VII, *infra*.

119.    Furthermore, Defendant USM was complicit and failed to stop the

harassment and hostile work environment that Plaintiff Smith was subjected to *infra*, and

that had been reported to USM during the time that Plaintiff Smith worked under the

supervision of Defendant Case-Price*, infra*.

120.    Plaintiff Smith seeks any and all remedies and damages available to her as

a result of the aforementioned acts and conduct that were in violation of Title VII of the

Civil Rights Act of 1964, as amended.

## COUNT IV

## TITLE VII RETALIATION

121.    Plaintiff Smith re-alleges and hereby incorporates by reference and makes a part hereto each and every one of the above numbered paragraphs, inclusive of the allegations of fact contained therein.

122.    Plaintiff Smith was unlawfully retaliated against for having engaged in a protected activity by opposing unlawful treatment and engaging in protected activities under Title VII and filing of the Charge of Discrimination with the EEOC, *infra*; and for having opposed such unlawful treatment in violation of Title VII.

123.    Plaintiff Smith opposed the severe and pervasive treatment in the workplace in violation of Title VII and other applicable federal law and she was subjected to retaliation and reprisal after protesting the unlawful treatment by Defendant Case-Price when she complained to Human Resources and later filed her initial Charge with the EEOC, *infra*.

124.    Plaintiff Smith was subjected to retaliation and reprisal by the Defendant USM and its officials that would dissuade an employee from bringing and pursuing a Charge before the EEOC.  Plaintiff Smith was subjected to badgering and a hostile working environment as a result of her filing an internal grievance and later a Charge with the EEOC, *infra*.

125.    Plaintiff Smith would show that the retaliation continued after the filing of her Charges with the EEOC of discrimination and retaliation. Plaintiff Smith's opposing unlawful treatment on account of her race resulted in further retaliation and a transfer in January 2018, to a ***new*** position, with ***new*** job duties and not in her area of expertise,

*infra*, social work.  Plaintiff Smith does not utilize her expertise for which she obtained her doctorate degree in 2015.

126.    Plaintiff Smith would show that the Defendant USM engaged in subsequent retaliatory acts of the like complained and alleged in the Amended Charge filed the EEOC.  These actions, including the "transfer" are of a continuous nature and are subsequent retaliatory acts by the Defendant USM.  *McDonnell Douglas v. Green, 411 U.S. 792, 382 (1973)* (observing that an employer's actions after the date of the adverse employment decision may be probative of the employer's intent at the time of the decision).

127.    Plaintiff Smith seeks any and all remedies and damages available to her as a result of the aforementioned acts and conduct that were in violation of Title VII.

## COUNT V

## VIOLATION OF THE EQUAL PROTECTION RIGHTS OF  PLAINTIFF SMITH

128.    Plaintiff Smith re-alleges and hereby incorporates by reference and makes part hereto each and every one of the above numbered paragraphs, inclusive of the allegations of facts contained therein.

129.    Defendant Case-Price, at all material times alleged herein, violated Plaintiff Smith's right to equal protection, as a result of her being subjected to a hostile work environment after having made claims of violation of Title VII; and that she was and has been subjected to intentional and arbitrary discrimination and retaliation by Defendant Case-Price.

130.    Plaintiff Smith would show that the purpose of the equal protection clause is to secure every person within the State's jurisdiction against ***intentional and arbitrary***

*discrimination*, whether occasioned by express terms of a statute or *by its improper execution through duly constituted agents*.  In the case, *sub judice*, Plaintiff Smith was subjected to a hostile treatment as a result of, *inter alia*, her race and in retaliation for her race based complaints and disparate treatment by Defendant Case-Price.

131.    Plaintiff Smith would show that the Fourteenth Amendment prohibits the "deny[ing] to any person within its jurisdiction the equal protection of the laws." This "Equal Protection Clause 'is essentially a direction that all persons similarly situated should be treated alike.'" *Qutb v. Strauss, 11 F.3d 488, 492 (5th Cir. 1993) (quoting City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985)).*

132.    Plaintiff Smith would show that she "received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001); *see In re U.S*., 397 F.3d 274, 284 (5th Cir. 2005); *Beeler v. Rounsavall*, 328 F.3d 813, 816-17 (5th Cir. 2003); *Rolf v. City of San Antonio*, 77 F.3d 823, 828 (5th Cir. 1996). See: **Club Retro LLC v. Hilton**, *568 F.3d 181, 2009 U.S. App. LEXIS 9864(5th Cir. La. 2009); and  **Clayton v. Tate County Sch. Dist.**, 2014 U.S. App. LEXIS 5504(5th Cir. Miss., Mar. 25, 2014).*

133.    As a result of the acts and conduct described herein by the Defendant Case-Price, *infra*, Plaintiff Smith seeks any and all relief to which she is entitled to for the denial of equal protection of the laws, including money damages against Defendant Case-Price.

## COUNT VI

## HOSTILE WORK ENVIRONMENT CLAIM

134.    Plaintiff Smith re-alleges and hereby incorporates by reference and makes part hereto each and every one of the above numbered paragraphs, inclusive of the allegations of facts contained therein.

135.    Plaintiff Smith was subjected to a hostile work environment by her supervisor, Defendant Case-Price, and her employer, Defendant USM is responsible for this conduct that was severe and pervasive.

136.    Plaintiff Smith, in a hostile working environment claim, must establish, *inter alia*, that the harassment was sufficiently severe or pervasive as to affect a term condition or privilege of her employment.  To be actionable the alleged harassment must have created an environment that a reasonable person would find hostile or abusive. Whether the environment was hostile or abusive depends upon the totality of the circumstances including factors such as frequency of conduct, its severity, the degree to which the conduct is physically threatening or humiliating and the degree to which the conduct unreasonably interferes with the employee's work performance.

137.    That Defendant USM had a duty to fully investigate the allegations and complaints made by Plaintiff Smith and to protect employees such as Plaintiff Smith from harassment and bullying by Defendant Case-Price that possessed the authority to inflict psychological injury by altering the work environment in objectionable ways.

138.    Plaintiff Smith would show that factors to determine whether conduct is severe or pervasive include: "its frequency, whether it was physically threatening or humiliating or merely offensive, and whether it ***unreasonably interfered*** with the

employee's work performance." *Passananti v. Cook Cnty.* 689 F.3d 655, 667 (7th Cir. 2012).

139.    Plaintiff Smith would show that a hostile work environment exists when "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 78, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998) (citing Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).*

140.    Plaintiff Smith would show that to prevail on a race-based hostile work environment claim, an employee must prove: "(1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) such harassment was based on race or national origin; (4) the harassment complained of affected a term, condition, or privilege of employment; [and] (5) the employer *knew or should have known of the harassment in question and failed to take prompt remedial action*." *Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002).*

141.    Plaintiff Smith would show that the Defendant USM knew about the harassment and failed to take effective action to stop it.  Management of the Defendant USM knew that Defendant Case-Price wanted to force Plaintiff Smith to leave the employment of USM; and that Defendant Case-Price made that clear to Plaintiff Smith by her actions described herein, including the termination of her employment, *infra*.

142.    Plaintiff Smith would show that the Defendant USM, and it officals, chose to transfer her to another department, in which Plaintiff Smith had to learn a new position

and new job duties, *infra*, rather than take proper action against Defendant Case-Price for her racial animus and conduct alleged herein.

143.    Plaintiff Smith would show that Defendant USM was made aware of that Defendant Case-Price's actions were inflicting psychological injury on Plaintiff Smith by altering the terms and conditions of her employment with USM.  Defendant USM simply chose a "solution" that was for the betterment of the "University" and to the detriment of Plaintiff Smith.

144.    As a result of the acts and conduct described herein by the Defendants USM and Case-Price, *infra*, Plaintiff Smith seeks any and all relief to which she is entitled to for the hostile work environment claim, including money damages against Defendant USM, et al for the emotional distress that has consisted of sleeplessness, anxiety, stress, depression, humiliation, loss of self- esteem, and that includes the transfer from her prior job duties in social work.  *Patterson v. P.H.P. Healthcare Corp., 90 F.3d 927, 938 (5th Cir. 1996).*

## COUNT VII

## INDIVIDUAL DEFENDANT CASE –PRICE

145.    Plaintiff Smith re-alleges and hereby incorporates by reference and makes a part hereto each and every one of the above numbered paragraphs, inclusive of the allegations of fact contained therein.

146.    Plaintiff Smith would show that Defendant Case-Price under 42 U.S.C Section 1983 was personally involved in the deprivation of a rights secured by the applicable federal laws or Constitution of the United States.  Defendant Case-Price is

personally liable for her actions as set forth herein, *infra*. Plaintiff Smith was subjected to racial discrimination and retaliation in violation of federal law.

147.    Plaintiff Smith would show that Defendant Case-Price is liable for either (1) his personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *See Harvey v. Andrist, 754 F.2d 569, 572 (5th Cir.), cert. denied, 471 U.S. 1126, 105 S. Ct. 2659, 86 L. Ed. 2d 276 (1985).*

148.    Plaintiff Smith would show that the actions of Defendant Case-Price demonstrated a deliberate indifference toward the constitutional rights of Plaintiff Smith; and that such failure and actions caused a constitutional injury to Plaintiff Smith.

149.    Plaintiff Smith would show that Caucasian employees were preferentially given pay raises by Defendant Case-Price and African American staff were unlawfully denied salary increases and merit raises. African American staff were treated differently by Defendant Case-Price and subjected to retaliation when seeking a pay raise of any kind; and Defendant Case-Price ended the employment when African American staff made requests for equal pay.

150.    Plaintiff Smith would show that she suffered a violation of a constitutionally protected right and that right was clearly established at the time of the alleged misconduct. Defendant Case-Price deliberately "did nothing" to stop her treatment and conduct towards Plaintiff Smith that constituted a racial animus, retaliation and reprisal in the workplace and caused Plaintiff Smith to suffer the constitutional injuries alleged herein.

151.    As a result of the acts and conduct of Defendant Case-Price, Plaintiff Smith seeks actual, compensatory and punitive damages from Defendant Case-Price in her individual and personal capacity under 42 U.S.C. Section 1983 for, *inter alia*, the emotional distress that Defendant Case-Price had caused her that has included sleeplessness, anxiety, stress, depression, humiliation, loss of self- esteem, and the loss of her ***more prestigious*** position in the field of social work for which Plaintiff Smith obtained a doctorate degree from Arizona State University in 2015.   *Patterson v. P.H.P. Healthcare Corp., 90 F.3d 927, 938 (5th Cir. 1996).*

## COUNT VIII

## FIRST AMENDMENT RETALIATION UNDER SECTION 1983

152.    Plaintiff Smith re-alleges and hereby incorporates by reference and makes part hereto each and every one of the above numbered paragraphs, inclusive of the allegations of facts contained therein.

153.    Under the First Amendment, Plaintiff Smith engaged in a constituted protected activity by reporting to Defendant USM that federal funding violations of Defendant Case-Price; and that as a result, Plaintiff Smith was retaliated against as a result of the constitutionally protected conduct; and the reporting of matters of a "public concern" by Defendants Case-Price and in turn Defendant USM, the recipient of federal funding, *infra*.

154.    Plaintiff Smith has brought his action under 42 U.S.C Section 1983 claiming that the adverse employment actions and transfer violated the First Amendment to the U.S. Constitution and her right of free speech. A paramount priority of the First Amendment it to protect expression relating to "the matter in which government is

operated and should be operated." *Mills v. Alabama, 384 U.S. 214, 86 S. Ct. 1434, 1437, 16 L. Ed. 2d 484 (1966).*

155.    Plaintiff Smith, under the First Amendment, engaged in: (1) a constitutionally protected conduct (2) was subjected to a retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) there clearly exists a **causal link** between the constitutionally protected conduct and the retaliatory action. *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). "[T]he key question in determining whether a cognizable First Amendment claim has been stated is whether 'the alleged retaliatory conduct was **sufficient to deter a person** of ordinary firmness from exercising his First Amendment rights.'" *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir.) (quoting *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)); *see also Crawford-El v. Britton*, 523 U.S. 574, 589 n.10 (1998) ("The reason why such retaliation offends the Constitution is that it ***threatens to inhibit*** exercise of the protected right.").

156.    Plaintiff Smith would show that the First Amendment prohibits a public employer from engaging in acts of retaliation and reprisal for bringing forth matters of racial inequality and that is a matter of public concern that is protected under the First Amendment.  ***Lane v. Franks, 134 S. Ct. 2369, 2014 U.S. LEXIS 4302, 189 L. Ed. 2d 312 (2014)***.

157.    Plaintiff Smith reported matters relating to the racial animus of Defendant Case-Price and her actions that impacted, *inter alia*, Defendant USM's receipt of federal funding and state funding violations.   Matters of racial discrimination are always a matter of a "public concern" especially when that institution receives federal and state funding.  Furthermore, Defendant Case-Price retaliated against Plaintiff Smith for her

advocacy post on Facebook regarding the importance of social workers; and the post did address the department, Plaintiff's job, or Defendant Case-Price. The post was written for a colleague that worked at a home health agency.

158.    Plaintiff Smith would show that "***speech***" by citizens on matters of public concern lies at the heart of the First Amendment, which "was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people," *Roth v. United States, 354 U. S. 476, 484, 77 S. Ct. 1304, 1 L. Ed. 2d 1498 (1957)*. This remains true when speech concerns information related to or learned through public employment. After all, public employees do not renounce their citizenship when they accept employment, and this Court has cautioned time and again that public employers may not condition employment on the relinquishment of constitutional rights. *See, e.g., Keyishian v. Board of Regents of Univ. of State of N. Y., 385 U. S. 589, 605, 87 S. Ct. 675, 17 L. Ed. 2d 629 (1967); Pickering, 391 U. S., at 568, 88 S. Ct. 1731, 20 L. Ed. 2d 811; Connick v. Myers, 461 U. S. 138, 142, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983)*.

159.    Plaintiff Smith would show that there is considerable value, moreover, in encouraging, rather than inhibiting, speech by public employees. For "[g]overnment employees are ***often in the best position to know what ails the agencies*** for which they work." *Waters, 511 U.S. 661, 674*. "The interest at stake is as much the public's interest in receiving informed opinion as it is the employee's own right to disseminate it." *San Diego* v. *Roe*, 543 U. S. 77, 82, 125 S. Ct. 521, 160 L. Ed. 2d 410 (2004) (*per curiam*). *See also: Lane v. Franks, 189 L. Ed. 2d 312, 2014 U.S. LEXIS 4302 (2014)* regarding "speech involving matters of public concern" when it can fairly be considered as relating

to any matter of *political, social, or other concern of the community*, or when it is a subject of general interest and of value and concern to the public.

160.    Plaintiff Smith's "*speech*" at all material times was protected by the First Amendment of the U.S. Constitution.  Defendants USM, at all material times, knew that any actions by USM and /or Defendant Case-Price violated the constitutional rights of Plaintiff Smith.

161.    As a result of the acts and conduct as set forth herein, Plaintiff Smith has suffered injury, damage and harm for which she is entitled to recover, actual and compensatory damages from the Defendants USM and Case-Price in this action.

## COUNT IX

## PUNITIVE DAMAGES

162.    Plaintiff Cox re-alleges and hereby incorporates by reference and makes a part hereto each and every one of the above numbered paragraphs, inclusive of the allegations of fact contained therein.

163.    The acts and conduct of Defendant Case-Price were engaged in with such willful and wanton disregard for the rights of Plaintiff Smith, that she is entitled to recover of, from and against Defendant Case-Price, punitive damages over and above actual and compensatory damages sustained by Plaintiff Smith, as a result of the acts and conduct of the Defendant Case-Price, i*nfra*, and as alleged herein.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** based on the foregoing allegations, Plaintiff Smith requests this Court to assume jurisdiction over this cause, and upon a hearing of the merits in this cause, grant the following relief:

a.    Enjoining and permanently restraining these violations of the Title VI, Title VII; and ordering that the Defendant USM place Plaintiff Smith in a position in her chosen field of expertise, with any and all back pay, loss of benefits, and raises in salary that she is entitled as a result of the violations of Title VI and Title VII of the Civil Rights Act of 1964, as amended;

b.    Directing the Defendants USM and Case-Price to take such affirmative steps to ensure that the effects of these unlawful practices are eliminated and do not continue to affect Plaintiff's job and the performance of her duties for USM: and that Defendants USM and Case-Price be ordered to comply with Title VI and Title VII of the Civil Rights Act of 1964, as amended;

c.    Award Plaintiff Smith a judgment against Defendants, USM and Case Price, jointly and severally in the amount of **$1,500,000.00** for her actual and compensatory damages for which she is entitled for injury, damage, and loss suffered as a result of Defendants' acts and conduct as alleged herein; and for her emotional distress and humiliation by the acts of Defendants USM and Case-Price;

d.    Order the Defendants USM and Case-Price to comply with the applicable federal law; and to cease and desist from the retaliation and reprisal against Plaintiff Smith; and to provide an appropriate sanction to the Defendants USM and Case-Price and any other officials of the Defendant USM for their actions and conduct, *infra*.

e.    Award Plaintiff Smith punitive damages against Defendant Case-Price in the amount of **$750,000.00** for the willful and wanton conduct, which was intentional, premeditated, malicious, and in violation of Plaintiff Smith's federally protected rights, said damages to be assessed to deter such conduct in the future;

42

f.    Award Plaintiff Smith any and all costs and attorney's fees as provided by under applicable federal law; and pursuant to *42 U.S.C. Section 1988*;

g.    Order Defendant USM, its officers, agents, employees, successors, assigns, and all persons in active concert or participation with them, and Defendant Case-Price from engaging in any acts to damage the reputation of Plaintiff Smith;

h.    Grant Plaintiff Smith any and all prospective injunctive relief as may be necessary and appropriate in the premises, including the purging of the personnel file of Plaintiff Smith and the redacting of any complaints made by Defendant Case-Price regarding any corrective action and any notations that are in any way negative towards Plaintiff Smith; and

i.    Award Plaintiff Smith any and all such other and further relief as may be necessary and proper and to which she is otherwise entitled as a result of the acts and conduct as set forth herein in this her *Complaint* filed in this action.

**RESPECTFULLY SUBMITTED**, this the 24th day of September, 2018.

**DR. TERRI T. SMITH, PLAINTIFF**

**By: _/s/ John M. Mooney, Jr._____**
**JOHN M. MOONEY, JR.**
**HER ATTORNEY**

**JOHN M. MOONEY, JR.**
**LAW OFFICES OF JOHN M. MOONEY, JR., PLLC**
208 Waterford Square, Suite 100
Madison, Mississippi 39110
Telephone: (601) 981-9555
Facsimile:  (601) 981-7922
Email: john@jmooneylaw.com
**MBIN: 3431**

**ATTORNEY FOR PLAINTIFF, DR. TERRI T. SMITH**

## **REQUEST FOR TRIAL BY JURY**

Plaintiff, **DR. TERRI T. SMITH**, by and through counsel, respectfully requests

this Court to grant her a trial by jury of her peers.

**RESPECTFULLY SUBMITTED**, this the 24th day of September, 2018.

By  /s/ John M. Mooney, Jr.
JOHN M. MOONEY, JR.
HER ATTORNEY